(93 Misc. Rep. 489)

### EMPIRE LIGHTING FIXTURE CO. v. BROWNING.

(Supreme Court, Appellate Term, First Department. February 10, 1916.)

1. CONTRACTS &#9758;214—CONSTRUCTION—TIME OF PAYMENT.
   Where a written contract for the performance of work contained no provision for payment as the work progressed, payment could not be demanded as of right until the completion of the contract.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 980–995; Dec. Dig. &#9758;214.]

2. ASSIGNMENTS &#9758;137—SUFFICIENCY OF EVIDENCE.
   In an action for the balance due on a contract to deliver certain gas fixtures, etc., evidence *held* to show that plaintiff was the assignee of a contract made by defendant with another company, and as such bound by the contract.
   [Ed. Note.—For other cases, see Assignments, Cent. Dig. § 234; Dec. Dig. &#9758;137.]

3. CONTRACTS &#9758;90—SUFFICIENCY OF EVIDENCE—CONSTRUCTION.
   Evidence in such action *held* to show that there was no consideration for the payments on account actually made by the defendant.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 410; Dec. Dig. &#9758;90.]

4. CONTRACTS &#9758;312—PERFORMANCE—DEFAULT.
   Under a contract for the furnishing of certain gas and electric light fixtures, etc., requiring certificates from the New York Board of Fire Underwriters for every fixture furnished, the failure to have a certificate issued for two of the buildings, or any inspection made of another building, was not a technical omission, but a default in performance, as a

&#9758;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lack of such certificates might seriously affect fire insurance and the city's supply of electricity to the buildings.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279½; Dec. Dig. ☞312.]

5. CONTRACTS ☞303—NONPERFORMANCE—EXCUSE.

Under such contract the plaintiff's failure to supply fixtures called for by the contract, of the value of $55.10 according to plaintiff's estimate, and which defendant testified it cost him $77.40 to furnish, on the ground of defendant's refusal to make payments, was not excused, as defendant was under no obligation to make the payments demanded.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1409-1443; Dec. Dig. ☞303.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Empire Lighting Fixture Company against Edward W. Browning. From a judgment in favor of plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued January term, 1916, before GUY, BIJUR, and GAVEGAN, JJ.

Joseph Day Lee, of New York City, for appellant.
Henry Silverman, of New York City, for respondent.

GUY, J. The complaint alleges that plaintiff, between the dates therein mentioned, at the special instance and request of the defendant, furnished, delivered, and hung certain gas and electric light fixtures and chandeliers to certain premises designated by defendant, for which the defendant promised and agreed to pay $1,672, and demands payment of $497, balance alleged to be due. The answer sets out the making of a written contract between the Empire Gas Fixture Company (hereinafter referred to as the contracting company) and the defendant for the doing of the work in question, that subsequently the contract was assigned to the plaintiff, the Empire Lighting Fixture Company, and the failure of the plaintiff to perform the contract, to the defendant's damage in the sum of $446.30.

[1-3] In the written contract pleaded by defendant there was no provision for payment as the work progressed, so that payment could not be demanded as of right until the completion of the contract. Rosen v. Bonagur, 143 N. Y. Supp. 1059. The testimony of plaintiff's president, Ansorge, if believed, would have obviated any such difficulty as far as the plaintiff was concerned, for he swore that there was no assignment, that he had at no time been connected with the contracting company, that that company went out of business and he received the contract from one of its former employés and on or about April 1, 1915, brought it to the defendant, told him the plaintiff company (whose name was almost the same as the contracting company, the only difference being that the word "lighting" was substituted for "gas fixture") had taken over the plant of the contracting company, and that, if defendant wanted the plaintiff to deliver under the contract, plaintiff was willing to do so, but that the contract did not say anything about payments, and on the promise of the defendant to make payments as the work progressed plaintiff agreed to perform the written con-

tract. The same witness stated, however, that the plaintiff was organized to and did take over the business of the contracting company, and that the contract was in plaintiff's office when defendant in April, 1915, telephoned that he was ready for the work to begin.

Defendant testified that one Clark was the person with whom he had dealt as the representative of the contracting company; that when Ansorge saw the defendant, the former said he was taking Clark's place—came instead of Clark; that nothing was said about the contract, or of altering it in regard to payment, and no mention made of the plaintiff; that because of threats made by Ansorge to stop the work payments were made from time to time, but that defendant gave as little as he could, so as to get Ansorge to go ahead; Ansorge on May 1, 1915, when he received $200 from defendant, receipted for that amount "on account of this contract," signing on the contract, "Empire Gas Fixture Company, P. J. Ansorge;" on June 3d he gave a similar receipt, and subsequently he signed receipts in the names of both the contracting company and the plaintiff.

It is apparent, therefore, from the preponderance of credible testimony, that plaintiff is the assignee of the contract made by defendant with the Empire Gas Fixture Company, and as such bound by the provisions of that contract, and that there was no consideration for the payments on account actually made by defendant.

[4] Under the contract plaintiff was required to "furnish and install material specified above complete in the buildings located as above, and furnish certificates from the New York Board of Fire Underwriters for each and all fixtures furnished and installed." Although plaintiff showed that an inspector of that board had inspected the two Seventy-Second street houses for which fixtures were furnished, and given an order for the issuance of a certificate, it does not appear that a certificate was ever issued for these two houses, or that an inspection was made of the Seventy-Third street house. This was not merely a technical omission, because lack of such a certificate may seriously affect fire insurance, and the department of water supply, gas, and electricity may cause the electric current to be shut off. See Meyers v. Shapiro, 127 App. Div. 186, 111 N. Y. Supp. 503.

[5] It further appears that, because defendant refused to make payments, the plaintiff did not supply fixtures called for by the contract of the value of $55.10, according to the plaintiff's estimate, and which defendant testified it cost him $77.40 to furnish. This default was without excuse, as defendant was under no obligation to make the payment demanded.

Judgment must be reversed, and new trial ordered, with $30 costs to appellant to abide the event. All concur.